## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARLY WELKIN, et al.,**<br><br>Plaintiffs,<br><br>   v.<br><br>**THE ISLAMIC REPUBLIC OF IRAN,**<br><br>Defendant. | **Civil Action No.**<br>**1:25-cv-04510 (TJK)** |

### PLAINTIFF CARLY WELKIN'S PRE-STATUS-CONFERENCE MEMORANDUM REGARDING IMPLEMENTATION OF THE JULY 27, 2026 MINUTE ORDER, THE QUESTION ACTUALLY DECIDED IN *TRANSAERO*, AND CURRENT IRAN-SPECIFIC SERVICE IMPEDIMENTS

Plaintiff Carly Welkin, proceeding pro se, respectfully submits this memorandum to facilitate the telephonic status conference set for July 31, 2026. Plaintiff accepts the Court's July 27, 2026 directive that the Clerk dispatch the paragraph (3) packet upon a renewed request, and she accepts the binding rule that service on a foreign state requires strict adherence to 28 U.S.C. § 1608(a). The remaining question is operational and record-based: how the Clerk and Plaintiff should implement a compliant § 1608(a)(3) attempt when current official sources document that Iran-directed mail is not accepted or served through the ordinary United States channels.

> **THE NARROW POSITION PRESENTED**
>
> *Transaero* is controlling for the proposition that a plaintiff may not use the wrong statutory branch, serve the wrong recipient, or substitute actual notice for compliance. It did not decide what constitutes a documented paragraph (3) attempt when the packet is correctly prepared for the correct recipient but no carrier will accept and carry it. Plaintiff does not request an unwritten wartime exception. She requests a Clerk-controlled attempt, an objective docket record of the carrier result, observance of the statutory 30-day period, and then the paragraph (4) procedure Congress expressly supplied for service that cannot be made under paragraph (3).

### PRELIMINARY STATEMENT

The Court's reliance on *Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148 (D.C. Cir. 1994), is correct as far as it goes. *Transaero* establishes that § 1608(a) is exclusive and must be followed strictly. The plaintiff there invoked the more lenient § 1608(b), mailed process to the Bolivian Air Force rather than to Bolivia's foreign minister, never attempted the methods in §

1608(a)(3) or (4), and relied on actual notice after the Air Force received and signed for the packet. Id. at 149-50, 154. The D.C. Circuit rejected that substitution.

This case presents the opposite compliance posture. Iran's status as the foreign state is undisputed. Plaintiff is not invoking § 1608(b). The intended recipient is the head of Iran's Ministry of Foreign Affairs at the ministry's principal office in Iran. Plaintiff is not asking the Court to treat actual notice as service. She is asking the Clerk to do exactly what the statute and the July 27 Order require, and to create a reviewable docket record if every available signed-receipt carrier refuses the packet at the threshold.

The relevant distinction is therefore not simply that Bolivia and Iran are different countries, that the cases arose on different continents, or that *Transaero* is thirty-two years old. Binding precedent does not lose force because of age or geography. The material distinctions are the question decided, the statutory branch used, the recipient selected, whether carriage was functioning, and the relief requested. In *Transaero,* registered mail worked and the packet reached the defendant in eight days. Here, the current official evidence says that United States Postal Service acceptance to Iran is suspended because of conflict-related logistics, the current FedEx guide marks Iran as not served, and the Court's own manual states that USPS registered-mail service is not permitted to Iran. Those facts bear directly on the statutory phrase, "if service cannot be made within 30 days under paragraph (3)." 28 U.S.C. § 1608(a)(4).

The 2026 Iran war cannot create a judicial exception to the statute, but neither can it be treated as nonexistent. The Court need not decide whether a formal declaration of war exists or adopt any disputed geopolitical label. The legally relevant facts are narrower: ongoing armed hostilities are publicly documented; USPS expressly attributes its Iran suspension to conflict-related logistics; and current carrier materials describe non-service or major transport disruption. Strict textual adherence requires applying the whole text to those facts, including Congress's express contingency for paragraph (3) service that cannot be made.

**QUESTIONS PRESENTED**

**1.** What did *Transaero* actually decide, and what issues did it leave open?

**2.** How should the Court implement § 1608(a)(3) and its July 27, 2026 Order when official, current, Iran-specific carrier evidence shows nonacceptance or non-service?

**3.** What procedure best preserves strict compliance, a clear appellate record, and an orderly transition to § 1608(a)(4) without converting paragraph (3) into either an optional step or an empty undocumented ritual?

**SHORT ANSWER**

First, *Transaero* decided an entity-classification and wrong-method case. It held that the Bolivian Air Force was part of the foreign state for service purposes and therefore had to be served under § 1608(a), not § 1608(b). Because the plaintiff never used § 1608(a)(3) or (4) and never directed process to the foreign minister or Secretary of State, actual receipt by the Air Force could not cure the defect. 30 F.3d at 149-50, 153-54. It did not address an otherwise correct paragraph (3) packet that an official carrier refuses to accept because service to the destination is suspended.

Second, *Republic of Sudan v. Harrison*, 587 U.S. 1 (2019), and *Przewozman v. Islamic Republic of Iran*, 754 F. Supp. 3d 1 (D.D.C. 2024), require the correct recipient, the correct sequence, and an actual compliant effort. They also identify the statutory next step: if the proper paragraph (3) effort fails, the plaintiff may proceed under paragraph (4). *Harrison*, 587 U.S. at 19; *Przewozman*, 754 F. Supp. 3d at 24-25. The disputed implementation question is what evidence and date should count when failure occurs before a carrier physically transports the package. The Court should resolve that question expressly at the status conference.

Third, the soundest procedure is neither a wartime bypass nor a pretense that suspended service is available. Plaintiff should tender a fully compliant packet to the Clerk; the Clerk should retain legal control of addressing and dispatch; Plaintiff and the Clerk should test every legally available signed-receipt carrier consistent with the Court's procedures; and the docket should record

acceptance, refusal, inability to generate a waybill, suspension, return, or non-delivery. The Court should then identify the operative attempt date and, if no signed receipt establishes service within thirty days, permit prompt paragraph (4) service. This approach gives effect to every word of the statute.

## RELEVANT PROCEDURAL AND CURRENT FACTUAL RECORD

| Date | Event | Relevance to Present Conference |
|---|---|---|
| Dec. 19, 2025 | Complaint filed under the FSIA, including 28 U.S.C. § 1605A. | The action is a terrorism-exception suit against Iran itself. |
| Feb. 4-5, 2026 | ECF No. 25 docketed a request for Clerk dispatch under § 1608(a)(3). | The docket reflected Plaintiff's effort to invoke the correct paragraph. |
| Feb. 11, 2026 | After the Clerk did not dispatch the packet, Plaintiff personally mailed materials to Iran. | Personal mailing did not satisfy the Clerk-dispatch requirement; the July 27 Order attributes the dispatch failure to the Clerk. |
| Apr. 13, 2026 | The Clerk dispatched a § 1608(a)(4) packet to the Department of State. | The record contains a prior diplomatic-service packet and a $2,275 payment, but the sequencing issue remained disputed. |
| May 8, 2026 | The Court denied requests to proceed directly to paragraph (4), citing *Transaero* and the statutory sequence. | The Court required a paragraph (3) attempt rather than predicted futility. |
| May 9, 2026 | Plaintiff filed ECF No. 34 seeking clarification and an order requiring Clerk dispatch. | The filing preserved the factual dispute concerning the Clerk's refusal. |
| July 24, 2026 | USPS updated its international suspension list; Iran remains suspended for lack of transportation. | Current official evidence postdates the pre-2026 cases and the earlier docket events. |
| July 27, 2026 | The Court granted ECF No. 34 in part, found the Clerk appears to have erred, and ordered dispatch upon renewed request. | The immediate task is implementation, not reconsideration of the hierarchy. |
| July 31, 2026 | Telephonic status conference at 11:30 a.m. | The parties and Clerk can establish a precise, documented protocol. |

Plaintiff's purpose in submitting this memorandum is to narrow, not enlarge, the dispute. The July 27 Order supplies the governing direction. The current carrier record supplies facts that did not exist in the older authorities. The status conference can determine how those two points fit together without deciding the merits of the action or creating a categorical exception for Iran.

**ARGUMENT**

**I. *Transaero* Is Binding, but Its Holding Is Narrower Than the Present Operational Question.**
**A. The case was about classification, the wrong statutory branch, and reliance on actual notice.**

*Transaero* arose from a commercial credit dispute involving aviation parts sold to the Bolivian Air Force. The Eastern District of New York clerk sent the summons and complaint by registered mail directly to the Air Force in La Paz. The Air Force received the packet and returned a signed receipt eight days later. The district court treated the Air Force as an "agency or instrumentality" and upheld service under § 1608(b). 30 F.3d at 149-50.

The D.C. Circuit framed the "nub of the dispute" as whether the Bolivian Air Force counted as the foreign state or as an agency or instrumentality for purposes of § 1608. Id. at 151. Applying a core-functions test, the majority held that a sovereign's armed forces are part of the foreign state and therefore must be served under § 1608(a). Id. at 151-53.

That classification resolved the service question because the plaintiff had never attempted § 1608(a)(3) or (4). It served the Air Force and other Bolivian officials, but not the head of Bolivia's Ministry of Foreign Affairs and not the Secretary of State. The plaintiff conceded that it had not strictly complied and asked the court to accept actual notice instead. Id. at 153-54. The D.C. Circuit declined, holding that "strict adherence to the terms of [§] 1608(a) is required." Id. at 154.

**B. The present case accepts the rule that *Transaero* announced and presents a different application question.**

| Issue | *Transaero* | Present Welkin Record |
|---|---|---|
| Defendant/status | Bolivian Air Force; disputed whether it fell under § 1608(a) or § 1608(b). | Islamic Republic of Iran itself; no classification dispute. |
| Underlying claim | Commercial breach-of-contract claim under § 1605(a)(2). | Terrorism-exception action under § 1605A. |
| Method used | Plaintiff used § 1608(b) and never attempted § 1608(a)(3) or (4). | Plaintiff invokes § 1608(a)(3) and seeks the statutory transition to (a)(4) only after a documented failure. |

| Issue | *Transaero* | Present Welkin Record |
|---|---|---|
| Recipient | Air Force and officials, but not the head of the ministry of foreign affairs or Secretary of State. | Packet is to be directed to the head of Iran's Ministry of Foreign Affairs at the ministry in Iran. |
| Carrier reality | Registered mail functioned; the Air Force received and signed for the packet in eight days. | USPS suspends Iran acceptance; FedEx marks Iran not served; DHL and regional networks report conflict-related disruption. |
| Defect asserted | Actual notice was offered as a substitute for the exclusive statutory method. | No actual-notice substitute is requested; the question is how to document carrier-level inability under the correct method. |
| Question decided | Which service subsection governed, and whether actual notice cured use of the wrong subsection. | What constitutes a compliant, documented attempt when no carrier will accept or carry a properly prepared packet. |
| Requested result | Enforcement of a default judgment despite noncompliance. | Prospective protocol that follows the hierarchy and preserves a clean record before any default request. |

The table identifies legally material distinctions. By contrast, saying only that Bolivia is in South America, Iran is in Asia, or *Transaero* is old would not distinguish a binding D.C. Circuit rule. Plaintiff therefore does not rely on geography or age as independent legal arguments. She relies on the different statutory question and the radically different, officially documented transportation record.

**C. Chief Judge Mikva's dissent is pertinent only to the boundary of the majority's holding.**

Chief Judge Mikva dissented from the majority's categorical core-functions test. He believed the majority placed administrability and policy concerns above the statute's apparent entity-specific definition of an "agency or instrumentality." *Transaero*, 30 F.3d at 155-56 (Mikva, C.J., dissenting). That view did not prevail and does not relax § 1608(a)'s service requirements.

The dissent is nevertheless useful for one limited proposition: *Transaero*'s contested issue was how to classify a military entity under §§ 1603 and 1608. The majority's service discussion followed from that classification and from the plaintiff's admitted failure to use § 1608(a). Neither opinion considered carrier suspension, war-related logistics, or threshold nonacceptance of a correctly addressed paragraph (3) packet. The Court can apply *Transaero* fully without extending it to factual and procedural questions it did not decide.

**II. *Harrison* and *Przewozman* Require a Correct Attempt, but They Also Confirm the Statutory Route After Failure.**

**A. *Harrison* involved a wrong destination, not an unavailable carrier.**

In *Republic of Sudan v. Harrison*, the clerk mailed the service packet to Sudan's foreign minister through Sudan's embassy in Washington, D.C., rather than to the minister's office in Sudan. The Supreme Court held that § 1608(a)(3) requires direct dispatch to the foreign minister at the minister's office in the foreign state. 587 U.S. at 3, 19. The Court enforced that rule despite the apparent formality and the foreign state's likely awareness of the litigation. Id. at 19.

But *Harrison* also described the statutory cure: the plaintiffs could attempt paragraph (3) again and, if the attempt failed, turn to paragraph (4). Id. That is the sequence Plaintiff proposes. She does not seek delivery through an embassy, a substitute recipient, or an alternate branch of § 1608. She seeks direct foreign-ministry dispatch under paragraph (3), followed by paragraph (4) if the compliant effort does not produce service.

Justice Thomas's dissent observed, in a different context, that direct overseas mailing may be particularly inefficient where the destination has experienced armed conflict or political instability. Id. at 25 (Thomas, J., dissenting). That observation is nonbinding and does not alter the majority's address rule. It does, however, reinforce the common-sense point that the carrier result must be proved, not assumed.

**B. *Przewozman* supplies the closest analytical test: a compliant effort plus an impediment.**

*Przewozman* involved Iran, the IRGC, and the Ministry of Intelligence and Security. The plaintiffs attempted paragraph (3), but the packets were not correctly addressed to the head of the relevant ministry of foreign affairs and the later paragraph (4) service therefore could not cure the defect. The court held that a plaintiff must attempt paragraph (3) "in a manner that complies with the statutory directives" and may proceed to paragraph (4) only if that compliant effort fails. 754 F. Supp. 3d at 23-24.

The court explained that the words "cannot be made" require both a compliant paragraph (3) effort and an impediment standing in the way. Id. at 23. That formulation favors a concrete protocol here. Plaintiff should not merely predict failure; she should submit the correct packet to the Clerk and document the exact impediment encountered. A carrier's categorical refusal, an inability to generate a destination waybill, a suspension-based return, or non-delivery after acceptance are objective impediments, not plaintiff error.

*Przewozman* rejected a futility argument partly because historical cases from 2011, 2012, and 2017 showed that Iran sometimes accepted properly made paragraph (3) service; the court therefore reasoned that a renewed attempt "might well succeed." Id. at 25. That was a record-based conclusion, not a permanent factual rule. The official July 2026 record is materially different. USPS now refuses Iran-directed acceptance because of conflict-related logistics, and FedEx's current service guide marks Iran as not served. The earlier cases remain legally relevant, but their assumption that a carrier may carry the packet cannot displace current official carrier notices.

### III. The July 2026 Record Establishes a Materially Different Iran-Specific Transportation Reality.

The Court need not rely on rhetoric, analogy, or speculation. The evidence is dated, official, and operational. See Revised Ex. E at 3. It should be used for the narrow purpose for which it is competent: determining whether and how a compliant signed-receipt mailing can presently be accepted, carried, and delivered to Iran.

| Source and Date | What the Source Establishes | Proper Limitation |
|---|---|---|
| USPS Iran notice, Mar. 3, 2026 | USPS suspended acceptance of items destined to Iran because of logistics impacts resulting from the Middle East conflict. | Establishes USPS nonacceptance; does not alone prove that every private courier is unavailable. |
| USPS international suspensions, updated July 24, 2026 | Iran remains listed under transportation unavailability; already deposited items are returned as service-suspended mail. | Current official fact directly relevant to any USPS tender. |
| D.D.C. Clerk Manual, rev. July 2024 | The Court's manual states that USPS registered-mail service is not permitted to Iran or Syria. | Administrative guidance; it does not override § 1608(a) or a case-specific order. |
| FedEx 2026 Service Guide, updated July 20, 2026 | Iran is marked "Not served" for U.S. export and import service, with a sanctions footnote. | Strong evidence of FedEx non-service; the Clerk may still document an actual account or waybill result. |

| Source and Date | What the Source Establishes | Proper Limitation |
|---|---|---|
| DHL advisories, Mar.-May 2026 | DHL reports regional airspace closures, Strait of Hormuz disruption, reduced acceptance reliability, rerouting, and possible temporary suspensions. | DHL's public advisories do not categorically prove that every Iran legal-document shipment is refused; an actual approved-shipper inquiry is appropriate. |
| Associated Press, July 30, 2026 | AP reports renewed U.S. strikes on Iranian targets, Iranian attacks, a five-month conflict, and renewed fighting affecting the Strait of Hormuz. | Context corroborating the current hostilities; carrier and government notices remain the primary proof of mail unavailability. |

USPS provides the clearest link between the armed conflict and the service problem. Its Iran-specific notice says acceptance is suspended because of logistics impacts from the conflict. Its July 24 international alert continues to list Iran under unavailability of transportation and instructs that already-deposited items be returned. This is not a litigant's prediction that service will fail; it is the designated postal operator's current refusal to accept the destination.

FedEx's current guide is similarly concrete. Updated July 20, 2026, the guide identifies Iran as not served for U.S. export and import services. The sanctions footnote also illustrates why Iran's operational environment differs from the ordinary foreign-state mailing assumed in a commercial case involving Bolivia in 1988. Again, the point is not that sanctions rewrite § 1608(a). The point is that they affect whether the means specified by § 1608(a)(3) exist in practice.

The DHL evidence is more qualified. Public DHL materials document war-related regional disruption, but Plaintiff has not located a public DHL statement categorically declaring that every legal-document shipment from the United States to Iran is unavailable. The Court's checklist instructs a shipper sending to an embargoed country to verify approved-shipper status before pickup. The proper response is therefore an actual inquiry and a docketed result, not an unsupported claim that DHL is necessarily unavailable.

The Associated Press Iran hub and its July 30 report are useful contemporaneous context. They report renewed strikes and a continuing conflict affecting regional transportation routes. The Court need not treat the AP report as a substitute for official carrier proof. It confirms why the March and July carrier restrictions are current realities rather than relics of earlier litigation.

> **WHAT THE CURRENT RECORD DOES - AND DOES NOT - PROVE**
> It proves that USPS is presently unavailable and that FedEx currently lists Iran as not served. It supports a serious, evidence-based concern about DHL and regional carriage. It does not prove, without an actual inquiry, that no conceivable signed-receipt private method exists. The requested protocol therefore tests any legally available method and records the result. That is stricter and more reviewable than either blind dispatch or a categorical bypass.

### IV. The Text Itself Accommodates Documented Impossibility Without Creating an Exception.

### A. Paragraph (4) is Congress's express response to paragraph (3) service that cannot be made.

Section 1608(a) is a sequence. Paragraph (3) requires a translated packet, signed-receipt mail, the correct foreign-ministry recipient, and Clerk addressing and dispatch. Paragraph (4) applies "if service cannot be made within 30 days under paragraph (3)." The word "cannot" necessarily requires a factual inquiry into capability. A packet rejected before carriage because the destination is suspended has not been served, but the rejection is powerful evidence of why service cannot be made by that method.

The statute does not command the Court to pretend that a nonexisting route exists. Nor does it authorize Plaintiff to skip the paragraph. The two principles fit together: the Clerk must control a properly prepared attempt; the docket must capture the carrier's response; thirty days must be observed as the Court determines; and paragraph (4) then supplies the next exclusive method. In that sense, strict adherence is the solution, not the obstacle.

### B. The sensible-construction and impossibility maxims reinforce the statute's own contingency; they do not displace it.

The Supreme Court has long stated that "all laws should receive a sensible construction." *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 486-87 (1868). General language should not be applied to produce absurd or oppressive results when the legislature supplied a rational rule for the actual situation. Id. The related maxim *lex non cogit ad impossibilia* means that the law does not compel the impossible.

Plaintiff invokes those principles modestly. They do not authorize a court-created wartime exception to § 1608(a)(3), especially after *Harrison*. They help explain why the statute's own words, "cannot be made within 30 days," must be given real work. A court does not abandon textualism by recognizing an official carrier refusal. It applies the text to a proved fact and then uses the very next paragraph Congress enacted.

### V. Iran's Terrorism Designation and the FSIA's Amendment History Supply Context, Not a Service Waiver.

The Department of State has designated Iran as a State Sponsor of Terrorism since January 19, 1984. Plaintiff's action invokes the terrorism exception in § 1605A. Those facts sharply distinguish the jurisdictional and sanctions context from the commercial contract claim in *Transaero*. They also help explain the practical restrictions reflected in current carrier materials.

They do not, however, create a separate service method. Section 1608 was enacted in 1976, before Iran's 1984 designation. The current Office of the Law Revision Counsel source credit shows that § 1608 was added by the FSIA in 1976 and contains no later amendment to the operative paragraph (3)-(4) text. Congress later amended the broader FSIA chapter, including by adding § 1605A in 2008 and § 1605B in 2016. Congress therefore knew how to address terrorism expressly, but it did not add a state-sponsor bypass to § 1608(a).

| Question | Accurate Answer | Effect Here |
|---|---|---|
| When was § 1608 enacted? | October 21, 1976, Pub. L. 94-583, § 4(a), 90 Stat. 2894. | The operative paragraph (3)-(4) text predates Iran's designation and the present conflict. |
| Has the FSIA chapter changed? | Yes. Among other changes, Congress added § 1605A in 2008 and § 1605B in 2016. | The broader statute evolved to address terrorism and related jurisdiction. |
| Was § 1608(a)(3)-(4) itself rewritten for state sponsors? | No amendment appears in the current source credit for § 1608. | Iran's designation is context, not an automatic service exception. |
| Does § 1605A erase § 1608? | No. Jurisdictional exceptions and service requirements are distinct. | Plaintiff must still perfect service under the hierarchy. |
| Why mention the designation? | It is part of the case's statutory and sanctions environment and distinguishes the practical record from a routine commercial dispute. | It supports factual context while preserving the controlling service rule. |

This is the legally disciplined way to use the distinction. Iran's designation and the 2026 war do not change who must be served or who must dispatch the packet. They are facts that bear on

whether any carrier can perform the paragraph (3) transmission and on the reasonableness of promptly documenting failure and proceeding through paragraph (4).

### VI. Iran-Specific D.D.C. Dockets Illustrate a Record-Based Transition to Diplomatic Service.

Plaintiff's revised Exhibit E identifies three D.D.C. dockets in which judges permitted paragraph (4) service after considering evidence that earlier service could not be completed. See Revised Ex. E at 4-8.

They are not binding precedent and do not supersede *Transaero, Harrison, Przewozman,* or this Court's orders. Their relevance is procedural: they show the kind of objective record that can support an orderly transition.

| Docket | Record Before the Court | Use and Limitation |
|---|---|---|
| *Baker v. Islamic Republic of Iran*, No. 22-cv-2765 (BAH) | Paragraph (3) request; Clerk notice that DHL no longer delivered to Iran/Syria; motion and failed-service evidence. | Court allowed paragraph (4) after a documented delivery problem. Nonprecedential, fact-specific minute order. |
| *Ghodstinat v. Islamic Republic of Iran*, No. 23-cv-3175 (CRC) | Motion, memorandum, declaration, and proposed order supporting inability or delay. | Court granted leave to use paragraph (4). The user-cited 2025 ECF No. 24 is a later merits opinion, not the 2023 service order. |
| *Naivasha v. Islamic Republic of Iran*, No. 25-cv-1577 (JDB) | Notice with carrier-restriction exhibits; court found inability under paragraphs (1)-(3). | Notice was construed as a motion and paragraph (4) was permitted. Again, the ruling depended on that docket record. |

The Court's May 8 Order correctly distinguished predicted failure from a completed statutory record. The proposed protocol meets that concern. It does not ask the Court to infer impossibility from another case's old carrier evidence. It asks the Clerk to generate current evidence in this case and then apply the statute to that evidence.

The later reported merits opinion in *Ghodstinat* is pertinent only in a downstream sense: it demonstrates that the case proceeded to merits adjudication after the court authorized diplomatic service. It is not authority for skipping paragraph (3). Plaintiff therefore relies on the December 2023 service order, as described in the docket and Exhibit E, only as a nonbinding procedural example.

**VII. A Clerk-Controlled, Documented Protocol Best Implements the July 27 Order.**

At the status conference, Plaintiff respectfully proposes that the Court settle the following concrete points. The protocol preserves the Court's authority, respects the Clerk-dispatch requirement, and creates an objective record for any later jurisdictional review.

| Step | Proposed Procedure | Why It Matters |
|---|---|---|
| 1 | Plaintiff submits a renewed request with the summons, complaint, notice of suit, and complete Persian translations, addressed to the head of Iran's Ministry of Foreign Affairs at the ministry's principal office in Iran. | Eliminates address, recipient, and translation defects under *Harrison* and *Przewozman*. |
| 2 | The Clerk reviews, seals, addresses, and retains legal control over dispatch. Plaintiff supplies prepaid carrier materials or an account as the Clerk directs. | Complies with the statutory phrase "addressed and dispatched by the clerk." |
| 3 | USPS nonacceptance is documented by the current suspension notice and, if the Court requires, a counter or system refusal. FedEx non-service is documented by the current guide and any waybill/account result. | Converts public notices into case-specific evidence where feasible. |
| 4 | For DHL, Plaintiff completes the approved-shipper inquiry required by the Court's checklist and supplies any available waybill; the Clerk or Plaintiff dockets the actual acceptance or refusal result. | Avoids overstating DHL's public advisories and tests the remaining identified option. |
| 5 | The docket records any carrier refusal, inability to create a label, suspension notice, return, or non-delivery, together with the complete packet and the Clerk's dispatch notation. | Creates proof of a compliant effort plus the impediment described in *Przewozman*. |
| 6 | The Court identifies the operative date from which the paragraph (4) thirty-day period runs, including the rule for a threshold carrier refusal. | Resolves the only substantial implementation ambiguity before later default proceedings. |
| 7 | If service is not made within thirty days, the Clerk promptly proceeds under § 1608(a)(4) using the already prepared diplomatic-service materials to the extent administratively permissible. | Follows the statutory next step and minimizes needless duplication. |
| 8 | The Clerk and Department of State determine whether Plaintiff's prior $2,275 payment may be credited, reused, or otherwise preserved, subject to agency rules. | Addresses prejudice from the Clerk error without asserting an entitlement the Court cannot guarantee. |

One point warrants express judicial direction. A carrier may refuse the parcel before it can be physically placed in transit. Plaintiff respectfully submits that an otherwise complete, Clerk-controlled tender that fails solely because the destination is suspended should qualify as the paragraph (3) attempt, or should establish that paragraph (3) is unavailable on the record. But because § 1608(a)(3) uses the word "dispatched," and because no controlling case squarely resolves

threshold nonacceptance, Plaintiff asks the Court to specify the operative rule and date rather than leaving the issue for later jurisdictional litigation.

That request is narrower than the relief denied on May 8 and July 27. Plaintiff is no longer asking to proceed on predicted futility alone. She is prepared to complete the process the Court directs. The requested clarification concerns how to document the failure of an actual, correctly prepared attempt when the obstacle is external and current.

### VIII. The Proposed Approach Protects the Court, the Foreign State, and the Plaintiff.

A clean paragraph (3) record protects the foreign state by ensuring that the statutory recipient, language, documents, and Clerk role are correct. It protects the Court by preventing a later default judgment from resting on a substantial-compliance theory rejected by *Transaero* and *Harrison*. It protects Plaintiff by ensuring that carrier refusal caused by war, sanctions, or suspension is not later mislabeled as neglect or an address defect.

It also avoids two opposite errors. The first would be to treat the war and official suspension notices as an unwritten exemption and skip paragraph (3). The second would be to disregard those notices, demand a shipment that no carrier will accept, and produce no docket evidence of why the shipment never moved. The statute requires neither error. It requires a strict sequence supported by facts.

### REQUESTED IMPLEMENTATION DIRECTIONS

Without requesting any ruling on the merits of the action, Plaintiff respectfully asks the Court to give the following limited implementation directions so that the service issue is resolved on a clear record:

**1.** *Transaero* remains binding for strict adherence to § 1608(a), but it did not decide the effect of current carrier nonacceptance on a correctly prepared paragraph (3) attempt.

**2.** The July 27 Order requires the Clerk, upon Plaintiff's renewed request, to address and dispatch the paragraph (3) packet to the head of Iran's Ministry of Foreign Affairs.

**3.** USPS currently suspends acceptance of Iran-directed international mail because of conflict-related logistics and lack of transportation, and the D.D.C. Clerk Manual states that USPS registered mail is not permitted to Iran.

**4.** FedEx's current 2026 Service Guide marks Iran as not served for United States export and import service.

**5.** DHL availability should be determined by the approved-shipper inquiry and actual booking result contemplated by the Court's checklist, rather than by assumption.

**6.** A complete Clerk-controlled tender and the carrier's objective response should be docketed, and the Court should identify the operative attempt date for § 1608(a)(4).

**7.** If paragraph (3) service is not made within thirty days of the date the Court identifies, paragraph (4) is the next exclusive method.

**8.** Plaintiff's prior diplomatic-service payment and packet should be preserved or credited to the extent permitted by the Department of State and Clerk procedures, without prejudging any fee issue outside the Court's authority.

**PROPOSED SERVICE-SEQUENCE FLOWCHART**

The following flowchart expresses Plaintiff's proposed reading. It contains no "impossibility bypass." The conflict and mail suspension operate as evidence of failure after a compliant effort, not as a substitute for the effort.



*Figure 1. Proposed strict-compliance protocol for § 1608(a)(3)-(4).*

## CONCLUSION

Plaintiff respectfully asks the Court to apply *Transaero* precisely, not expansively. The case

forecloses wrong-branch service and actual-notice shortcuts. It does not require the Court to ignore

official July 2026 evidence that the designated means of transmission are suspended or unavailable.

*Harrison* and *Przewozman* require a correct attempt and then direct the litigant to paragraph (4) if

that effort fails.

The law does not compel an impossible delivery, but it does compel a disciplined record.

Plaintiff therefore requests a Clerk-controlled paragraph (3) tender; documentation of each carrier

result; an express ruling identifying the operative attempt date; observance of thirty days; and prompt transition to paragraph (4) if service is not made. That procedure honors the statutory text, the Court's July 27 Order, binding precedent, and the undeniable operational reality of the 2026 Iran conflict.

Respectfully submitted,

*Carly Welkin*

/s/ Carly Welkin
**Carly Welkin**
Plaintiff
Email: karly784@gmail.com

Dated: July 30, 2026

## APPENDIX A - AUTHORITIES AND ONLINE SOURCES

The following official and publicly accessible sources are provided to facilitate verification of the

current operational facts and authorities cited in this memorandum.

## Controlling and Persuasive Legal Authorities

• **Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148 (D.C. Cir. 1994):** online source (majority and Chief Judge Mikva dissent)
• **Republic of Sudan v. Harrison, 587 U.S. 1 (2019):** online source (official U.S. Reports version)
• **United States v. Kirby, 74 U.S. (7 Wall.) 482 (1868):** online source (Library of Congress U.S. Reports scan)
• **28 U.S.C. § 1608:** online source (Office of the Law Revision Counsel)
• **28 U.S.C. Chapter 97 amendment notes:** online source (includes additions of §§ 1605A and 1605B)

## Official Service and Carrier Sources

• **USPS International Mail Service Suspensions, updated July 24, 2026:** online source (Iran listed under unavailability of transportation)
• **USPS Iran Temporary Service Disruption, Mar. 3, 2026:** online source (conflict-related logistics)
• **D.D.C. Clerk's Office Procedures for Service of Process on a Foreign Defendant, rev. July 2024:** online source (states USPS registered mail is not permitted to Iran)
• **D.D.C. Service of Process on a Foreign Defendant Checklist, rev. July 2024:** online source (carrier and docket procedures)
• **U.S. Department of State FSIA Checklist:** online source (paragraph (3) attempt and 30-day requirement)
• **FedEx Service Guide 2026, updated July 20, 2026:** online source (Iran marked not served)
• **DHL Middle East Logistics Update, Mar. 2, 2026:** online source (regional air and maritime disruption)
• **DHL Middle East Crisis Situation Updates:** online source (continuing logistics context)

## Iran Status and Current Conflict Context

• **U.S. Department of State, State Sponsors of Terrorism:** online source (current designation framework; Iran designated Jan. 19, 1984)
• **Associated Press Iran hub:** https://apnews.com/hub/iran (current reporting index)
• **Associated Press, U.S. strikes on Iranian targets, July 30, 2026:** online source (contemporaneous conflict and transportation context)

## Iran-Specific D.D.C. Docket Examples Compiled in Exhibit E

• **Baker v. Islamic Republic of Iran, No. 22-cv-2765 (BAH), docket:** online source (fact-specific paragraph (4) transition)
• **Ghodstinat v. Islamic Republic of Iran, No. 23-cv-3175 (CRC), docket:** online source (Dec. 2023 service order; later merits opinion is distinct)
• **Naivasha v. Islamic Republic of Iran, No. 25-cv-1577 (JDB), docket:** online source (fact-specific paragraph (4) transition)

**END OF MEMORANDUM**